## PEOPLE v BEACHMAN

Docket No. 78-3941. Submitted April 15, 1980, at Detroit.—Decided July 2, 1980.

Arnold Beachman was charged with possession of heroin with intent to deliver. A preliminary examination was held, and defendant was bound over for trial. Defendant moved to suppress the evidence and a suppression hearing was held in Recorder's Court of Detroit. Defendant's motion to suppress was granted, George W. Crockett, Jr., J., and defendant was discharged. The people appeal alleging the trial court erred in holding (1) that the arresting officer was not entitled to rely on information supplied by an informant and thus lacked probable cause to arrest the defendant, (2) that the arresting officer entered the hotel illegally, thereby tainting defendant's subsequent arrest, and (3) that the heroin discovered in defendant's possession was improperly seized and, therefore, inadmissible as evidence. *Held:*

1. The trial court erred in concluding that there was no probable cause to arrest the defendant, since a known and reliable informant supplied the arresting officer with a detailed description of the defendant and the offense committed.

2. Exigent circumstances justified the warrantless entry into the hotel lobby for the purpose of effectuating an arrest of the defendant.

3. The search of defendant's person was incident to a lawful arrest, and, thus, the seizure of the heroin discovered was proper and the heroin was admissible as evidence.

Reversed and remanded.

REFERENCES FOR POINTS IN HEADNOTES
[1-6, 12, 13] 5 Am Jur 2d, Arrest § 46.
[7-9, 12, 13] 68 Am Jur 2d, Searches and Seizures §§ 2, 4, 16, 35, 36, 44.
[10, 11] 68 Am Jur 2d, Searches and Seizures §§ 16, 20, 21.
[12, 13] 68 Am Jur 2d, Searches and Seizures § 37.
[14] 68 Am Jur 2d, Searches and Seizures § 44.
[15] 68 Am Jur 2d, Searches and Seizures § 37.
[16] 4 Am Jur 2d, Appeal and Error § 268.
    21 Am Jur 2d, Criminal Law §§ 214, 216.

1. CRIMINAL LAW — EVIDENCE — PROBABLE CAUSE — WARRANTLESS ARREST — INFORMANT — RELIABILITY — BASIS FOR CONCLUSION.

Evidence derived from an informant will not, by itself, constitute probable cause for a warrantless arrest unless the police (1) have reason to believe the information is reliable, and (2) are informed of the underlying circumstances upon which the informant based his conclusion.

2. CRIMINAL LAW — INFORMANTS — DETAILED INFORMATION — RUMOR — GENERAL REPUTATION.

Information from an informant must describe the accused's criminal activity in sufficient detail to ensure that it was more than a casual rumor circulating in the underworld or an accusation based on the individual's general reputation.

3. CRIMINAL LAW — INFORMANTS — TRUSTWORTHINESS — PAST EXPERIENCE.

A disclosure that an informant has provided information on past occasions which later proved to be correct upon investigation is one recognized method of establishing the trustworthiness of the informant.

4. CRIMINAL LAW — ANONYMOUS INFORMANTS — EXTRINSIC CORROBORATION — INDEPENDENT SOURCES.

The veracity of an anonymous informant can be established extrinsically by corroborating certain parts of the information given by independent sources.

5. CRIMINAL LAW — INFORMATION — RELIABLE INFORMANT — INDEPENDENT CORROBORATION.

Information given by an informant who is not anonymous, but has provided reliable information in the past on numerous occasions, does not need independent corroboration.

6. CRIMINAL LAW — WARRANTLESS ARREST — PROBABLE CAUSE — TEST — INFORMANT — DESCRIPTION.

A warrantless arrest satisfies the test for probable cause where a known, reliable informant supplies a detailed description of a suspect and the offense committed, and the fact that the informant omitted any mention of one of the suspect's physical characteristics does not invalidate an otherwise distinctive description.

7. CONSTITUTIONAL LAW — FOURTH AMENDMENT — SEARCHES AND SEIZURES — PHYSICAL ENTRY — CRIMINAL LAW.

The physical entry of the home is the chief evil against which the

wording of the Fourth Amendment to the United States Constitution is directed.

8. CONSTITUTIONAL LAW — PRESUMPTION — UNREASONABLE PER SE — EXIGENT CIRCUMSTANCES — CRIMINAL LAW.

Searches and seizures inside a home without a warrant are presumed to be per se unreasonable, absent exigent circumstances.

9. CONSTITUTIONAL LAW — SEARCHES AND SEIZURES — WARRANT — REASONABLE EXPECTATION OF PRIVACY — CRIMINAL LAW.

A search warrant is required if the person searched has a reasonable expectation of privacy in the area searched or the materials seized.

10. CONSTITUTIONAL LAW — SEARCHES AND SEIZURES — EXPECTATIONS OF PRIVACY — PUBLIC PLACE — WARRANT — PROBABLE CAUSE — CRIMINAL LAW.

A person in a public place has no expectation of privacy which would require the need, upon probable cause, to obtain a search warrant prior to the initiation of a search or seizure.

11. CONSTITUTIONAL LAW — EXPECTATION OF PRIVACY — MULTIPLE DWELLINGS — COMMON AREAS — CRIMINAL LAW.

A hallway shared by tenants in a private, multiple unit dwelling or the lobby of a locked residence hotel is not a public place, where entry is limited by right to occupants of the building and their guests, and the occupants can, therefore, expect a high degree of privacy in that area.

12. CONSTITUTIONAL LAW — ARREST — SEARCH WARRANT — EXIGENT CIRCUMSTANCES — CRIMINAL LAW.

The difference between an entry for the purpose of conducting an arrest and an entry for the purpose of conducting a search is one of degree rather than kind, since both share the fundamental element of breaching the entrance to an individual's home, and, therefore, both require the obtaining of a warrant prior to the arrest or the search, absent exigent circumstances.

13. CONSTITUTIONAL LAW — EXIGENT CIRCUMSTANCES — WARRANT — ARREST — SEARCH — CASE-BY-CASE DETERMINATION — CRIMINAL LAW.

The existence of exigent circumstances which would waive the requirement of a warrant prior to an arrest or search inherently depends upon a case-by-case determination.

14. Constitutional Law — Exigent Circumstances — Destruction
    of Evidence — Necessity — Criminal Law.

> Exigent circumstances exist where there is reason to believe that
> the removal or destruction of evidence is imminent, where
> further entry of the premises is necessary to prevent the
> recurrence of a fire, or where it is necessary to ensure the
> safety of the police or others.

15. Criminal Law — Warrantless Searches and Seizures — Inci-
    dent to Arrest — Evidence — Admissibility at Trial —
    Constitutional Law.

> A search of a suspect incident to a lawful arrest without a
> warrant is proper, and materials discovered and seized during
> the search are admissible as evidence at the trial of the
> suspect.

16. Trial — Bar — Double Jeopardy — Appeal — Remand —
    Trial Court — Error.

> A trial is not barred on remand by the Court of Appeals by the
> prohibitions against double jeopardy, where a trial court erred
> in suppressing evidence and dismissed the prosecution against
> a defendant.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Anne B. Wetherholt,* Assistant Prosecuting Attorney, for the people.

*Milton R. Henry,* for defendant.

Before: M. F. Cavanagh, P.J., and R. M. Maher and D. F. Walsh, JJ.

Per Curiam. The defendant was charged with possession of heroin with intent to deliver in violation of MCL 335.341(1)(a); MSA 18.1070(41)(1)(a). Defendant was bound over for trial following a preliminary examination on June 9, 1978. Thereafter, defendant moved to suppress the evidence. A suppression hearing was conducted on June 19, 1978, in Detroit Recorder's Court. The trial court granted defendant's motion to suppress the evi-

dence and discharged the defendant. The people appeal from this ruling as of right.

At the preliminary examination, Detroit Police Officer Woodrow Horne testified that on May 14, 1978, he received the following tip from an unidentified informant:

"He told me a black male was selling heroin in the lobby of 14 Charlotte. I asked him for a description and he gave me a black male about twenty-eight years old, 5'10" 140 to 150 pounds, wearing a gray jacket, green shirt, red print-type pants, and also stated that the drugs would be in his waistband of his pants."

Officer Horne characterized his informant as "reliable" because of six prior tips received from him, five resulted in arrests, two ultimately resulted in convictions, and two cases were yet pending. In addition, Officer Horne testified that 14 Charlotte is a residence hotel which is a known site of narcotics sales.

Ten minutes after receiving the tip, Officer Horne arrived at the hotel. The door to the hotel was locked. Officer Horne knocked on the door and was admitted by one Ladonne Towns. Towns was not the manager of the hotel, and Officer Horne did not know whether Towns was a guest of the hotel. Towns gave his address as 2454 Glynn Court. Officer Horne stated that he had known this man to live at 14 Charlotte.

When he entered the lobby, Officer Horne observed that defendant fit the description in that he wore a gray jacket, green shirt and plaid pants. Defendant was with a female. Officer Horne approached the defendant, identified himself, placed him under arrest for violation of the controlled substance act, then lifted up his shirt and discovered two bundles of six coin envelopes, each con-

taining suspected heroin. Officer Horne opened one pack which contained an off-white powder. The bundles were later analyzed and found to contain 5.2 grams of heroin.

Officer Horne had obtained no warrant prior to the arrest. He could not see the defendant until after he had entered the building and did not actually observe the defendant selling heroin.

At the suppression hearing, the defendant testified that, at the date of his arrest, he had been sharing a room at the hotel with a friend. He did not invite the officer to enter the hotel. Someone named Ladonne told him that the officer had brushed past him through the door as Ladonne was leaving the hotel. After defendant was arrested in the lobby, the officer searched him and took the packages of suspected heroin.

At the conclusion of the evidentiary hearing, the trial court found that the description provided by the informant, which omitted any mention of defendant's distinctive facial hair, was not sufficiently distinctive, that the police were not entitled to rely on the informant without further investigation to ascertain that defendant was the correct person and that the police lacked probable cause to enter a private dwelling to make the arrest.

The first issue to be resolved on appeal is whether the arresting officer, acting on information supplied by the informant, had probable cause to arrest the defendant herein.

Evidence derived from an informant will not, by itself, constitute probable cause for a warrantless arrest unless: (1) the police have reason to believe the information is reliable, and (2) the police are informed of the underlying circumstances upon which the informant based his conclusion. *Aguilar*

*v Texas,* 378 US 108; 84 S Ct 1509; 12 L Ed 2d 723 (1964), *People v Hoerl,* 88 Mich App 693, 700; 278 NW2d 721 (1979). In *Spinelli v United States,* 393 US 410; 89 S Ct 584; 21 L Ed 2d 637 (1969), the United States Supreme Court explained that the tip must describe the accused's criminal activity in sufficient detail to ensure that it was more than a "casual rumor circulating in the underworld or an accusation based on the individual's general reputation". In *McCray v Illinois,* 386 US 300; 87 S Ct 1056; 18 L Ed 2d 62 (1967), the Court stated that one recognized method of establishing the trustworthiness of the informant is a disclosure that the informant has provided information on past occasions which later proved to be correct upon investigation.

If an informant remains anonymous, there is no way to assess his reliability based on past experience. The *Spinelli* Court said that the veracity of an anonymous informant can be established extrinsically, by corroborating certain parts of the information given by independent sources.

In *People v Walker,* 401 Mich 572; 259 NW2d 1 (1977), an anonymous tipster told the police officer that defendant had just driven to Detroit to pick up "a load of dope" and would return to Benton Harbor in approximately five hours. The informant stated that defendant would be riding in one of two automobiles, which he then described in detail, and would be riding with two women. Finally, the tipster said that defendant would be going to 668 Superior Street upon his return to Benton Harbor. The Michigan Supreme Court held that this information was sufficiently detailed to warrant the inference that it was obtained in a reliable manner and was more substantial than a "casual rumor". The Court also found that the

police, working independently, had traced the registration of one of the described vehicles to a woman living at the specified address on Superior Street and had seen the other described car parked in the driveway, which was sufficient to corroborate the reliability of the informant.

In the case at bar, there was no need for independent corroboration of the information given, since the tipster was not anonymous, but had provided reliable information six times in the past. See *People v Greer,* 91 Mich App 18, 23; 282 NW2d 819 (1979), *People v Tooks,* 403 Mich 568, 586; 271 NW2d 503 (1978) (dissenting opinion).

In *People v Greer, supra,* the informant telephoned the police officer with information that he had just observed the defendant selling heroin at Duke's Playhouse Bar. He described defendant as a 36-year-old black male wearing a brown hat, brown jacket, white sweater and blue jeans and was known to the informant as Steel Bill Greer. The officer arrived at the bar within ten minutes of receiving the tip. The defendant fit this description perfectly. The officer stopped him, asked his name, and placed him under arrest. He then searched the defendant and found coin envelopes containing heroin. This informant had provided reliable information five times in the past. This Court upheld the warrantless arrest, finding that it had satisfied the two-pronged test for probable cause. The *Greer* Court found further that the trial court had erred in concluding otherwise and dismissing the case in mid-trial.

We conclude that the trial court in the instant case erred in concluding that there was no probable cause to arrest the defendant where a known and reliable informant supplied a detailed description of the defendant and of the offense he had

observed being committed. The fact that the informant omitted any mention of defendant's facial hair does not invalidate his otherwise distinctive description.

The second allegation of error raised by the people involves the legality of the arresting officer's warrantless entry into the locked residence hotel in order to arrest the defendant.

The United States Supreme Court has unequivocally stated that the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed". *United States v United States Dist Court for the Eastern Dist of Michigan,* 407 US 297, 313; 92 S Ct 2125; 32 L Ed 2d 752 (1972). There is a basic presumption that searches and seizures inside a home without a warrant are per se unreasonable, absent exigent circumstances. *Coolidge v New Hampshire,* 403 US 443, 474-475; 91 S Ct 2022; 29 L Ed 2d 564 (1971).

Under *Katz v United States,* 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967), a search warrant is required if the person searched has a reasonable expectation of privacy in the area searched or the materials seized. A person in a public place has no expectation of privacy. *United States v Santana,* 427 US 38; 96 S Ct 2406; 49 L Ed 2d 300 (1976).

In *People v Killebrew,* 76 Mich App 215, 218; 256 NW2d 581 (1977), this Court held that a hallway shared by tenants in a private, multiple-unit dwelling is not a public place. The Court stated that since entry was limited by right to occupants of the building and their guests, the occupants could expect a high degree of privacy in that area. We can find no basis for distinction in privacy interests between the hallway of an apartment building and the lobby of a locked residence hotel.

In a recently released decision, *Payton v New York,* 445 US 573; 100 S Ct 1371; 63 L Ed 2d 639 (1980), the United States Supreme Court criticized a distinction drawn by the New York Court of Appeals between an entry into defendant's zone of privacy for purpose of an arrest and an entry for purpose of conducting a search.[1] The New York court decided that invasion of a defendant's home for the purpose of arresting him was a less offensive intrusion, reasoning as follows:

"To the extent that an arrest will always be distasteful or offensive, there is little reason to assume that arrest within the home is any more so than arrest in a public place; on the contrary, it may well be that because of the added exposure the latter may be more objectionable."[2]

Justice Stevens' majority opinion states that the difference between an entry for the purpose of an arrest and an entry for the purpose of conducting a search is one of degree rather than kind, since both share the fundamental element of breaching the entrance to an individual's home. Therefore, absent exigent circumstances, there cannot be an entry into a defendant's house without a warrant.

In the case at bar, the police officer, acting on probable cause supplied by the tip of a reliable informant, entered into a locked residence hotel without proper consent. He was not invited to enter by the defendant. He was not admitted by a manager or other person with authority. Ladonne Towns, who was alleged to have opened the door in response to the officer's knock, did not give the hotel as his address, so we must presume he was not a resident of the hotel at that time. Therefore,

[1] *People v Payton,* 45 NY2d 300; 380 NE2d 224 (1978).

[2] *Id.* 45 NY2d 300, 310-311.

the warrantless arrest of the defendant would be the basis for reversal, absent a finding of exigent circumstances.

The existence of exigent circumstances inherently depends upon a case-by-case determination. In *People v Tyler,* 399 Mich 564, 578; 250 NW2d 467 (1977), the Court said that exigent circumstances exist where there is reason to believe that the destruction of evidence is imminent or where further entry of the premises is necessary to prevent the recurrence of a fire. In *People v Plantefaber,* 91 Mich App 764, 770-771; 283 NW2d 846 (1979), this Court upheld the warrantless search of defendant's suitcase at the airport because circumstances were sufficiently exigent: defendant's suitcases had already been checked and defendant's plane was scheduled to depart shortly. In *People v Little,* 78 Mich App 164, 173; 259 NW2d 409 (1977), this Court upheld entry into defendant's trailer as exigent where it was done in order to ensure the arrest of fleeing felons. Ensuring the safety of police or others, as where there is a weapon which can be fired, is an exigent circumstance. *People v Olajos,* 397 Mich 629; 246 NW2d 828 (1976). In *People v Hopko,* 79 Mich App 611; 262 NW2d 877 (1977), police entered defendant's backyard garden at the cotenant's request and saw marijuana plants growing. This Court upheld the warrantless seizure of the plants because the owner was on the premises, presenting an "exigent circumstance" since the marijuana could be easily removed and destroyed.

We find sufficient exigent circumstances in the case at bar to justify the warrantless entry into the hotel lobby for the purpose of effectuating an arrest. The officer had obtained a tip only ten minutes earlier that the defendant, dressed in the

particularly described clothes, was engaged in the sale of narcotics. The officer could reasonably and justifiably believe that defendant would leave the lobby or would change his distinctive clothing in the time needed to secure an arrest warrant. Therefore, the trial court erred in concluding that the arresting officer entered into the hotel illegally, thus tainting the subsequent arrest of the defendant.

The final issue on this appeal is whether the heroin which was discovered in the defendant's possession was improperly seized, and whether it was, therefore, inadmissible into evidence. Based on our foregoing analysis, we uphold the search of defendant as incident to a lawful arrest. *Chimel v California,* 395 US 752; 89 S Ct 2034; 23 L Ed 2d 685 (1969), *United States v Robinson,* 414 US 218; 94 S Ct 467; 38 L Ed 2d 427 (1973). Therefore, the heroin which was seized was admissible into evidence, and the trial court erred in concluding that it must be suppressed.

We conclude that the trial court erred in suppressing the heroin and dismissing the prosecution against the defendant. We, therefore, reverse the dismissal and remand the matter to the trial court for trial. We note that a trial would not be barred by the prohibitions against double jeopardy. See, *People v Greer, supra.*